32365, 32366. PALATINE INSURANCE COMPANY, Ltd. *v.* GILLELAND.

DECIDED MARCH 18, 1949. REHEARING DENIED MARCH 30, 1949.

*Smith, Partridge, Field, Doremus & Ringel, Marvin A. Allison, Charles C. Pittard,* for plaintiff in error.

*W. L. Nix,* contra.

PARKER, J. ■ We will deal first with the plea in abatement. The company undertook to prove the plea by offering testimony of the insurance adjuster who represented it in handling the claim, to the effect that he worked for the General Adjustment Bureau which represented Palatine Insurance Company; that he was called in by the company to adjust or make an investigation of the loss of the plaintiff; that the insurance company assigned the loss to his bureau, which turned the matter over to him; that he handled all of the transactions concerning this loss after it was turned over to him, and was in charge of the entire investigation; that no one else had anything to do with it, and that he handled the matter himself; that he was never served with a written notice that the plaintiff was making application to the judge to appoint an umpire; that Palatine Insurance Company at that time had an agency in the county, the McDaniel Agency at Norcross; that he would not undertake to say whether or not they were served at that time; that he had never been to the Atlanta office of the insurance company, but had talked with their manager in Atlanta; that on cases he handled for the company all communications and notices pertaining to it were sent to him, and he got no written notice of intention to apply for the appointment of an umpire in this case; that he would not undertake to swear that he got all notices, but got whatever notices

·came to him; that, if a notice had been served on the McDaniel Agency or on the agency in Atlanta and they neglected to send it to him, he would not get it; and that "I do not say I get all papers that are served on them, I just get the papers they send to me."

Upon the conclusion of the testimony of the adjuster, which was all of the evidence that was offered on the plea in abatement, the court directed a verdict against the plea. We cannot say that this was error. A written notice of the application for the appointment of an umpire could have been served either on the local agency of the company or on its office manager in Atlanta without the knowledge of the adjuster. The company did not carry the burden of proving its affirmative allegations that such notice was not served on it. The court did not err in directing the verdict against the plea. Code, Ann.; § 38-103, and annotations thereunder.

■ The defendant made an oral motion at the beginning of the trial to dismiss the petition on the ground that it failed to set out a cause of action, and excepted pendente lite to the overruling of that motion. The petition alleged that the appraiser appointed by the company, after being notified to meet and after requesting a postponement of that meeting, agreed to meet with the other appraiser and the umpire at a later date for the purpose of appraising the loss, without objecting to the appointment of the umpire, or otherwise protesting his appointment; and, shortly before the time fixed for the meeting, the plaintiff's attorney was notified that the company would have nothing more to do with the appraisal.

The appearance of parties at the time and place of the arbitration waives all notice and similar defects. *Pike* v. *Stallings,* 71 *Ga.* 860. "It is a general rule of pleading and practice that parties must take advantage of defects in the proceedings before any further action on their part." *Harper* v. *Commissioners,* 52 *Ga.* 659, 660, 664. The law favors awards and adjustment of differences without litigation, and it is difficult to set them aside, and parties will not generally be heard to impeach the regularity or fairness of the findings of arbitrators. *Eberhardt* v. *Federal Ins. Co.,* 14 *Ga. App.* 340 (1), 342 (80 S. E. 856); *Johns* v. *Security Ins. Co.,* 49 *Ga. App.* 125 (4) (174 S. E. 215). See also *Fowler* v.

*Jackson*, 86 *Ga.* 337 (1) (12 S. E. 811); *Savannah, F. & W. Ry. Co.* v. *Decker*, 94 *Ga.* 149 (2) (21 S. E. 372). From the allegations of the petition it is inferable that the company knew of the appointment of the umpire when its appraiser requested a postponement of the meeting of the appraisers and the umpire, and agreed to meet with them later, and then declined to participate in making the appraisal without objecting to the umpire or questioning his appointment. The court did not err in overruling the motion to dismiss the petition.

■ After the plea in abatement had been disposed of, the main case was tried and evidence introduced by both parties. The court then charged the jury generally on all the contentions of both parties, but instructed the jury to find for the plaintiff $1050, the amount of the loss as determined by the appraiser selected by the plaintiff and the umpire; and submitted to the jury for their determination the question of damages and attorney's fees. The jury returned a verdict for the $1050 as directed and found the further sum of $250 as attorney's fees.

The plaintiff introduced in evidence the agreement for submission to appraisers, prepared and submitted by the company, showing that Carl Garner (for the insured) and Guy B. Foster (for the company) were appointed as appraisers, and the application to the judge of the superior court for the appointment of an umpire, with the order thereon appointing Frank Robertson as umpire, and the award made by Garner and Robertson fixing the actual loss and damage at $1050. The testimony of the husband of the plaintiff with respect to the appraisal was as follows: "I appeared with my wife and others in Norcross to have an appraisal of the loss before Mr. Garner and Mr. [Robertson]. The appraisal was not held the first day we met over there. The man didn't come from Atlanta. Mr. Garner then had a telephone conversation with the man in Atlanta. After the conversation we did not hold the appraisal. He said he couldn't be there that day but would be there a few days later. We met back that day. He was not there. No one showed up representing the company. A hearing was had between Mr. Garner and Mr. Frank [Robertson]. Evidence was introduced before them; I and others were sworn as witnesses. After hearing evidence an award was made." The testimony of Mr. Robertson was in part

as follows: "I had occasion to act as umpire in the appraisement of an automobile involving a loss of Mrs. Gilleland. I served with Mr. C. A. Garner. He is known as Carl Garner. The appraisers met on the matter twice. The appraisal was not held the first time. I wasn't [sic] present at the time when a telephone conversation was had between Mr. Garner, myself and a gentleman in Atlanta. The appraisal was not held the first time. When we met back a few days later the appraisal was held. Mr. Garner and I were the only ones present. That paper was signed by Mr. Garner and me. We made an award and found that the actual value of the car to be $1050." The agreement for submission to appraisers provided that "the award of said appraisers and umpire (if the umpire be called upon to act), or any two of them, made in writing, in accordance with this agreement, shall determine the amount of said loss and damage, as provided by the policy, or policies of said company or companies." Under the evidence we think that the appraisal made by one appraiser and the umpire, under the circumstances shown by the testimony, was sufficient to establish the amount of the loss at $1050. It was not error for the court to direct the jury to find this amount as the loss sustained by the plaintiff.

It is usually a question for the jury whether an insurance company, in refusing to pay a loss, acted in bad faith; and the term "bad faith" is not the equivalent of actual fraud, but means "any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policyholder to pay according to the terms of his contract and the conditions imposed by statute." *Cotton States Life Ins. Co.* v. *Edwards*, 74 *Ga.* 220 (4); *Ætna Life Ins. Co.* v. *Steward*, 49 *Ga. App.* 786 (5) (176 S. E. 777); *Liberty Mutual Ins. Co.* v. *A. C. L. R. Co.*, 66 *Ga. App.* 826, 834 (3) (19 S. E. 2d, 377). Where the loss occurred on October 18, 1947, and was immediately reported to the company, and proofs of loss were submitted on November 5, 1947, and the company demanded an appraisal, which was had on January 16, 1948, and the defendant was notified of such appraisal on January 22, 1948, and demand made upon it for payment on February 18, 1948, and the defendant failed to pay for more than sixty days thereafter and before the suit was filed on April 28, 1948, the defendant's only defense being the alleged invalidity of the appraisal, the jury

was authorized to find that the refusal to pay was in bad faith under the Code § 56-706. The plaintiff offered testimony of a practicing attorney with many years' experience that $500 would, in his opinion, be a reasonable fee in a case of this character. There was no evidence to the contrary. The verdict finding $250 as attorney's fees was authorized by the evidence. The general grounds of the motion for new trial show no cause for reversal.

■ The first special ground of the motion complains of the admission in evidence over objection of the agreement for submission to appraisers, and the award of the appraisers, and the petition to the judge of the superior court asking for the appointment of an umpire. It is contended that this documentary evidence did not show that the statutory notice of five days as required by the Code § 56-817, with respect to the appointment of an umpire was given to the defendant, and that the petition to the judge for the appointment of an umpire was never filed in any court. The rulings made in divisions 1 and 2, in dealing with the plea in abatement and the motion to dismiss, are applicable to the first contention respecting the notice. As to the second contention that the application for the appointment of an umpire, was never filed in court, it appears that the application was made in writing and that the judge of the superior court entered an order thereon appointing the umpire who acted in making the appraisal. The application was before the court and the failure to have it marked "filed in court" would not invalidate it. It will be presumed that the judge was acting lawfully in passing the order on the application presented to him.

■ Grounds 2, 3, and 4 complain of the directed verdict, on the ground.that five days' notice of the application for the appointment of an umpire was not shown by the plaintiff, for which reason the award was illegal and of no effect. For the reasons stated in other divisions of this opinion these grounds do not show error.

■ Ground 5 complains.of the charge on the subject of damages and attorney's fees. The court charged the Code § 56-706,. and defined the meaning of the term "bad faith" as used in the Code; and then clearly instructed the jury that they would have to find by a preponderance of the evidence that the failure and refusal to make payment was on account of bad faith on the part.

of the company before it would be liable for damages or attorney's fees, and that, if the company did not act in bad faith, the plaintiff could not recover either damages or attorney's fees. The charge excepted to was not error.

In exceptions pendente lite, the defendant complains of the refusal of the court to permit an amendment to its answer, charging fraud on the part of the plaintiff in obtaining the order appointing an umpire, "in that said judge was not correctly informed as to the statutory notice required." The amendment alleged also that the plaintiff did not give any written notice of her intention to apply for the appointment of an umpire, and that this amounted to a fraud upon the defendant. The original answer alleged that the notice was not given, and the amendment merely charged that the failure to give the notice was fraud. We do not think that the amendment alleged any facts showing fraud on the part of the plaintiff. The judge will be presumed to know statutory requirements, and the failure of a party to point them out is not a fraud on the court; and a failure to give a party notice of some contemplated action, without more than appeared in the amendment, is not a fraud on such party. The court did not err in rejecting the amendment .

The court did not err in overruling the motion for new trial.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*