## 5098.    EBERHARDT *v.* FEDERAL INSURANCE CO.

1. Where a matter at issue between two parties is submitted to third persons for their determination, and these persons render an award which does not exceed the authority given to them in the submission, and is in strict accordance therewith, they will not be heard to impeach the regularity or fairness of their findings.
2. The policy of fire insurance on which the plaintiff sued bound the defendant to pay to him the amount of his loss. The purpose of the submission to appraisers into which the parties entered was to fix the amount of the loss. The plaintiff's loss represented the difference between the value of the property before the fire and its value immediately thereafter. The effect of the award made by the appraisers was to fix the amount of the plaintiff's loss; it was unambiguous, was in strict accordance with the agreement of submission, and was binding upon the parties.
3. There being no proper evidence offered attacking the award for fraud or for any other reason for which it could be impeached under the law, it was not error to direct a verdict in favor of the plaintiff in accordance with the construction which the trial judge placed upon the award. DECIDED DECEMBER 9, 1913. REHEARING DENIED FEBRUARY 4, 1914.

Action on insurance policy; from city court of Savannah—Judge Davis Freeman. May 16, 1913.

*Anderson, Cann & Cann,* for plaintiff.
*Adams & Adams,* for defendant.

POTTLE, J. Suit was brought upon a policy of fire insurance, to recover for damage to an automobile. The petition was in two counts, the first count alleging that the plaintiff's loss was $1,000, and that he was entitled to recover that amount under the terms of the policy. In the second count it was alleged that two persons representing the plaintiff and the defendant respectively, and at their instance, had made a written report stating that it would cost a sum exceeding $1,000 to repair the damage to the automobile, and that, the damage thus having been fixed and ascertained by agreement of the parties, the plaintiff was entitled to recover the full amount of the policy. The policy insured against actual loss or damage to the automobile by fire, and provided that in case of loss the insurance company should be liable only for the actual cost of repairing or for the necessary replacing of parts destroyed or damaged. It was further stipulated in the policy that in the event of any disagreement as to the amount of loss, the same should be ascertained by two appraisers, each party selecting one, and that these appraisers should select an umpire and then estimate and

appraise the loss, and if they were unable to agree, the difference
should be submitted to the umpire for his determination, and the
award in writing of any two of the three thus selected "shall de-
termine the amount of such loss."

The defendant answered that in accordance with the stipulation
in the policy, the parties having been unable to agree on the loss,
their differences were submitted to appraisers, who reported that
the full value of the machine before the fire was $300, and the value
of the parts saved was $25, and that the defendant was indebted to
the plaintiff in the sum of $275, which had been tendered and re-
fused before suit. Thereupon the plaintiff amended his petition,
averring that there had been no arbitration between the parties but
only a mere appraisement, that there had been no disagreement
between the parties, and that the submission to appraisement was
not made for the purpose of fixing the amount of the loss of the
insured under the policy. It was further alleged that the ap-
praisement was void because the appraisers did not consider any
evidence as to the value of the automobile before the fire; that
the appraiser selected by the defendant had never seen the auto-
mobile and had no knowledge in reference to its value, and was
not an expert on the value of automobiles; that the sums stated
in the appraisement were not intended as awards, and were not
binding on the insured as to the amount of the loss under the
policy, because the appraisers did not understand and it was not
intended that they should fix the amount of such loss; that the
appraisers "fell into a gross error in placing the value of the auto-
mobile before the fire at only $300 under a palpable mistake," they
being of the opinion that the finding of such value would have no
effect on the amount of recovery by the insured; that the appraisers
well knew that the value of the automobile before the fire was
largely in excess of $300. It was further alleged that under a proper
construction of the appraisement, the appraisers intended that the
plaintiff should recover the sum of $1,000, the full amount due
under the policy; that the defendant's appraiser misled the plain-
tiff's appraiser and induced him to sign the appraisement on the
representation to him that the plaintiff would be entitled to recover
$1,000; and, finally, the appraisement was void because of palpable
mistake and fraud on the part of defendant's appraiser.

At the conclusion of the evidence the court directed a verdict in

favor of the plaintiff for $275; and error is assigned upon this ruling.

It appears, from the evidence, that after the fire the parties were unable to agree upon the loss. The policy was issued on October 8, 1909. The loss occurred May 10, 1910. In June, 1910, the parties entered into a written agreement selecting two appraisers to determine the loss. The agreement for appraisement stipulates that it is "for the purpose of ascertaining and fixing the amount of sound value and damage only to the property hereinafter described or in the accompanying schedule as may be found to have. been saved in a damaged condition, and shall not determine, waive, or invalidate any other right of either party to this agreement under said policy or policies, and it shall be optional with the company or companies to take all or any part of the property at such ascertained or appraised value, and also to repair, rebuild, or replace the property damaged with other of like kind and quality, in accordance with the provisions of the policy or policies." The property referred to in the foregoing stiplation was the automobile described in the policy sued on. The submission further provided: "It is further understood and agreed, that in determining the sound value and damage upon the property mentioned, the said appraisers and umpire, if the umpire be called upon to act, or any two, as hereinafter provided, are to make an estimate of the actual cash value thereof immediately preceding the fire, and of the actual cash cost of replacing or repairing the same, with proper deduction for depreciation, however caused." The appraisers thus selected accepted the appointment, took the usual oath to make a just appraisement, selected an umpire, and made the following award: "To the parties at interest: We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the sound value to be: value of the car at present time, $25; value of the car before the fire, $300; and the damage to be, cost of repairs to car, including new parts for body and new body, windshield, and top, $1,284.30. Witness our hands, this 13th day of June, 1910. S. F. Cook, James A. Rourke, appraisers."

1. It is conceded that the policy sued on is not a valued policy, and the parties are at issue with reference to the construction of the award and its validity, force, and effect. The law favors

awards and the adjustment of differences without litigation. The trial judge correctly held that the appraisers would not be heard to impeach their own findings. *Evans* v. *Edenfield, 7 Ga. App.* 175 (66 S. E. 491); *Mulligan* v. *Perry, 64 Ga.* 568; *Cobb* v. *Dortch, 52 Ga.* 548. The submission appears to have been in strict accordance with the terms of the policy. The submission itself was sufficient to show that the parties were unable to agree on the amount of the loss. Under the policy the question to be determined by the submission was the amount of loss sustained by the plaintiff. The submission directs the appraisers to ascertain the sound value and damage to the property, and in order to do this they were required to make an estimate of the actual cash value of the machine immediately preceding the fire, and of the actual cost of replacing or repairing the same. The words "sound value and damage," as used in the submission, are synonymous with the words "the amount of loss," as used in the policy. When the value of the machine immediately before the fire was ascertained and the value of the machine immediately after the fire was fixed, the difference between these two sums represented the loss which the plaintiff had sustained. Under the policy the insurer had the right either to pay to the insured the actual amount of the loss or to repair the machine and put it in the same condition it was in before the fire occurred. The award made by the appraisers furnished sufficient data to enable the insurer to exercise this option.

The plaintiff contends that a proper construction of the award, when taken in connection with the terms of the policy and the submission, is that the defendant was bound to pay the full amount of the policy, since this amount was less than the appraisers found to be necessary to repair the machine. It is also contended that if the language of the award does not compel such a conclusion, it is ambiguous, and parol evidence was admissible to show the actual intention of the appraisers. We do not think that either of these contentions is well founded, but, on the contrary, we are of the opinion that the trial judge properly held that the award was unambiguous, and that under it the insurer could not be compelled to pay more than the difference between the value of the machine before the fire and its value after the fire, to wit, $275. Certainly there can be no room for question that the appraisers have found the value of the car before the fire to be $300, and the value of the

parts saved to be $25. The difference between these two amounts represents the loss which the plaintiff has sustained. The terms of the submission and the award itself being unambiguous, parol evidence was not admissible to explain them, nor was it necessary for either party to the submission to have notice of the meeting of the appraisers or an opportunity to present evidence. The submission did not provide for such notice, or for the parties to have the opportunity to produce evidence upon the question at issue. On the contrary, the terms of submission were such as to indicate that the appraisers were to proceed informally to fix the amount of the plaintiff's loss, and, if unable to agree, to call in the umpire to settle their differences. See *Blakely Oil Co.* v. *Proctor & Gamble Co.,* 134 *Ga.* 139 (67 S. E. 389). Of course, the award could have been set aside for fraud or by showing that unfair advantage had been given to one of the parties, or for palpable mistake of law. Civil Code, §§ 5028-5029. There was nothing in the evidence in the present case to authorize a submission to the jury of any issue in reference to fraud on the part of the arbitrators or on the part of the defendant in connection with the award. The arbitrators themselves were not competent witnesses to impeach their own award, and the evidence submitted demanded the verdict directed. If the appraisers, through ignorance or neglect, have made an improper finding, it is nevertheless binding on the parties. The object of the submission was to fix the amount of the plaintiff's loss. The award furnished information from which the parties could arrive at the plaintiff's loss, and we do not think there was such a variance between the award and the submission as to vitiate the finding of the appraisers. *Judgment affirmed. Russell, C. J., dissents.*